Irving RIX, Plaintiff,
v.
TURNBULL–NOVAK, Inc., Defendant.
No. 9209.

United States District Court
W. D. Missouri, W. D.

Feb. 6, 1958.

Edward L. Scheufler, U. S. Atty., by Joseph L. Flynn, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Whitson Rogers, Kansas City, Mo., for defendant.

DUNCAN, Chief Judge.

Plaintiff instituted this action to recover damages from the defendant, under the provisions of § 9 of the Universal Military Training and Service Act [1] (Act of June 24, 1948, c. 625, Title I, § 9, 62

---

1. *"Reemployment Rights"*
 "(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) re-

Stat. 614 as amended, 50 U.S.C.A.Appendix, § 459), in the sum of $3,360, which he alleges is due him as a result of plaintiff's discharge as an employee of the defendant, within one year after he was discharged from the military service, which he alleges was in violation of the statute aforesaid.

The essential facts were stipulated, but both sides introduced evidence relative to facts not agreed to. The stipulation and the evidence reveal that J. Gordon Turnbull, Inc., had for many years prior to 1953, operated an extensive architectural and engineering business, with its headquarters in Cleveland, Ohio. It carried on its business in the United States, Canada, Alaska and Japan. It also maintained an office in Kansas City, Missouri, which, during the times involved in this controversy, was in charge of Ed G. Novak, as vice-president and district manager.

Plaintiff was employed by J. Gordon Turnbull, Inc., at a salary of $500 per month, from July 1, 1948, until on or about August 31, 1951, when he was called into active military service. He completed his military service with an honorable discharge, and returned to work for J. Gordon Turnbull, Inc., on or about February 15, 1953 (within less than 90 days of his release from military service), in a different position, status and pay than that held by him at the time he entered military service, and at a salary of $700 per month, and, according to the plaintiff's testimony (which is denied by the defendant), a guaranteed bonus sufficient to equal the sum of $10,000 per year.

For the purpose of disposing of both questions, the court shall make findings and conclusions as to each, although an adverse finding as to plaintiff on either issue would preclude his recovery, so far as this defendant is concerned.

First, I shall determine the question as to whether or not this defendant is a "successor in interest" to J. Gordon Turnbull, Inc. The enactment of 1948 created, for the first time, a liability against a "successor in interest" to the same extent as that of the original employer. J. Gordon Turnbull, Inc., was an individually owned corporation, and all of its stock was owned by J. Gordon Turnbull, who was president, and definitely the guiding influence in carrying on its widespread business activities. Turnbull died on April 1, 1953.

The evidence shows that as a result of his death, the whole organization was disrupted in all of its offices, and thereafter, Mrs. Turnbull was undecided as to what she would do with the business. Several projects in the Kansas City area were unfinished, and were being supervised by J. Gordon Turnbull, Inc., at the time of Turnbull's death.

Between July 6 and 8, Novak made some sort of agreement with J. Gordon Turnbull, Inc., to take over the Kansas City office in its entirety, office fixtures and uncompleted jobs. He organized the corporate defendant for that purpose on July 31, 1953; Novak owned 7,500 shares; Weldon Becket of Los Angeles,

ceives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

 \* \* \* \* \*

"(B) If such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

"(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; \* \* \*."

26,000 shares and Kelvin Vanderlip of Los Angeles, owned 3,000 shares. None of these persons had held any stock in J. Gordon Turnbull, Inc., and only Novak had been in any manner connected with its operation. As part of the agreement between Novak and J. Gordon Turnbull, Inc., the latter was to advance the payroll for the new corporation for a period of 15 days.

There is no evidence that J. Gordon Turnbull, Inc., had any further connection or financial interest in Turnbull-Novak, Inc., or ever received any benefits from the management of the projects above mentioned, or received any of the profits thereof. No one connected with J. Gordon Turnbull, Inc., had any voice in the management of Turnbull-Novak, Inc. The new corporation, the evidence reveals, was "on its own". There is no evidence that it had any connection with any other J. Gordon Turnbull, Inc., business or projects after those taken over by it pursuant to the agreement between Novak and J. Gordon Turnbull, Inc.

It seems to me that under the facts as above determined, the defendant is not a "successor in interest" to J. Gordon Turnbull, Inc., within the meaning of the statute. Of course, if Turnbull-Novak was not a successor, the plaintiff, never having been in its employ either before his entry into the military service, or after his return, would not be entitled to recover against it, regardless of any other fact or circumstance in the case.

For the purpose of disposing of the remaining issue, it may be assumed that defendant was a "successor in interest" to J. Gordon Turnbull, Inc. Plaintiff's employment upon discharge from the service, was under an agreement for a new position, a new status and new pay rate, and such employment was not under the provisions of the statute.

There is no question about the plaintiff having been discharged by J. Gordon Turnbull, Inc., after considerable discussion as to whether he would remain in another position. On July 15, 1953, a letter was addressed to him by Novak for that company, terminating his services as of that date, but continuing his pay until July 31, 1953.

Defendant contends that plaintiff was never in its employ, and that it was not the "successor in interest" of J. Gordon Turnbull, Inc., and could, therefore, not be liable to the plaintiff under any circumstances: It further contends that, even assuming it was the "successor in interest" to J. Gordon Turnbull, Inc., plaintiff did not desire to return to his old position of inspector; that he was employed by J. Gordon Turnbull, Inc., under an agreement to return to an entirely different position, status and rate of pay than that held by him at the time he entered the service, and that the plaintiff never sought to be, and never was, re-employed under the provisions of the Act.

On the contrary, plaintiff contends that although his return to the company was in a different position, status and rate of pay than that held by him at the time he entered military service, it was, nevertheless, re-employment within the meaning of the Act, and that he was discharged from such position, without cause, within one year; that defendant was a "successor in interest" to J. Gordon Turnbull, Inc., and is responsible to him in damages for the loss of salary resulting from his discharge.

The law required J. Gordon Turnbull, Inc., to restore plaintiff (if he was still qualified—and he was) to such "position of like seniority, status and pay" as he had at the time he entered the service. Plaintiff could demand no more, and the defendant could do no less. If defendant is correct in either of its contentions, it is not liable.

Prior to his entry into the military service, he had been employed as an inspector (at a salary of $500 per month) on the construction project of the Veterans' Hospital in Kansas City. He was not in charge of the project, but was under the supervision of another inspector, who was in charge thereof.

Although plaintiff attempts to establish the fact that just prior to his entry into the military service he had assumed some other position, and was, for a short time employed in connection with some work with the Air Force Base at Topeka, Kansas, yet there is no evidence indicating that there was any similarity between this job and the job which he finally took when he returned from the service, and there was no increase in pay.

During the time he was in the service, his contacts with the office through Novak, apparently were continued; they had conferences and social meeting during the time he was stationed in Dayton, Ohio, and this was several months before he was discharged from the service. During one of these visits, he stated to Novak that he would soon be out of the service, and asked him how the work was holding up, and he stated that he wanted to return to J. Gordon Turnbull, Inc., but did not want to return in the same position he had when he left for the service; that he wanted a better position and more pay.

This seems to have been the subject of discussion between Novak and Turnbull in Los Angeles, and it was suggested by Turnbull that because of the necessity of Novak being in Los Angeles a considerable part of the time in conference with Turnbull, that he should have an assistant. Turnbull suggested that he might give Rix a try and see how it worked out.

Some time thereafter, while Rix was in Los Angeles, he had a conference with Turnbull and Novak and some other officer of the company. Subsequent to that conference, Turnbull advised Novak that he thought Rix was a capable young man and would be suitable for the place, and to give him a chance, and suggested a salary of $700 per month.

Either by telephone or letter between Novak in Kansas City and Rix in New York, Rix agreed to return to the company as assistant to Novak; his duties were to make outside contacts, and to contact inter-organizational heads, and to relieve Novak of a considerable part of his administrative responsibilities, and thus enable him to spend more time with Turnbull in Los Angeles. It was under these definite circumstances and conditions that he returned as an employee to J. Gordon Turnbull, Inc.

As heretofore stated, Turnbull's death disrupted the business in all of the offices. Shortly thereafter, Mrs. Turnbull stated that she was undecided as to what she would do, but that she did not intend to take on any new business until she had made up her mind; she also stated that it was definitely necessary to materially reduce the overhead expenses, and with that in mind, the personnel list was gone over, and Rix, being the newest one on the list, it was decided that he could not be retained at the salary he was being paid.

As a result of this conference, Novak explained Mrs. Turnbull's position to Rix, and he was advised that he could not be continued on at his present salary; he was told that there were two other projects coming up very shortly, the Hallmark Building and the Baptist Hospital, and that he could be retained in his old position as an inspector at the same salary he was receiving at the time he left to enter the service. That position had not changed in responsibility, or in amount of pay.

Novak testified, and there is no denial of it, that Rix said the salary was not sufficient to enable him to meet his obligations; that he could obtain other jobs that would pay him $10,000 a year, and, further, that he could not take a demotion and decrease in salary without embarrassment in the eyes of his associates, and those with whom he had been working. Under these circumstances, he was then told to look for other work. The matter was discussed several times during the next six weeks or more, during which time Rix had not obtained a new job, and Novak, being "pushed" by the treasurer of J. Gordon Turnbull, Inc., notified Rix on July 15, that his services were terminated, but that he would receive pay until July 31. Thereafter, on August 15, he obtained employment with

a construction company at a salary of $528 per month.

 Plaintiff cites the case of Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 1010, 90 L. Ed. 1230. I am unable to find anything in that case that gives support to plaintiff's position. Many questions were determined in that case, including the question of whether or not the provisions of a collective bargaining agreement or the provisions of the Act should prevail. At the time the employee entered the military service, he was employed as a welder; upon his return from service, he was re-employed in the same position. In the opinion by Mr. Justice Douglas, the court stated:

"The Act was designed to protect the veteran in several ways. He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind.

"These guarantees are contained in § 8 of the Act and extend to a veteran, honorably discharged and still qualified to perform the duties of his old position. * * * He is thus protected against receiving a job inferior to that which he had before entering the armed services. (3) He shall be 'restored without loss of seniority' and be considered 'as having been on furlough or leave of absence' during the period of his service for his country, with all of the insurance and other benefits accruing to employees on furlough or leave of absence. § 8(c) Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war."

The Court stated: "The 'position' to which the veteran is restored is the 'position' which he left plus cumulated seniority."

Under this evidence, this plaintiff would not have, nor did he hold the position he had before he went into the service.

The Government also cites the case of Special Service Co., v. Delaney, 5 Cir., 172 F.2d 16, 19, in which it is stated:

"The plaintiff sought to buttress his claim for the apprentice job by showing that his successor as a laborer was upgraded to an apprentice when the company ceased to use laborers in New Orleans. This does not establish a claim to the position of apprentice, for, although the returning service man is entitled to the same job he had on leaving for military service, he is not entitled to promotions received by his successor during his absence."

When Delaney entered the service, he was a laborer, which job apparently was abolished, and the position designated as an "apprentice" at a different level and responsibility than that of laborer was established. The court further stated:

"That Delaney has no legitimate claim to apprentice status is clear. There remains the question of relating to his right to employment in a status equivalent to that of the job he left on entry into the service."

Apparently the employer had not offered Delaney a position "equivalent" to that which he had when he left for the service, because Delaney had demanded another job. The court further stated:

"However, such was not the case, as it was not until March 28, 1947, that the defendant made an offer to reinstate Delaney as a laborer, conditioned on his waiver of claim for back pay. On receipt of this offer, the plaintiff stated again he would accept reinstatement only as an apprentice with back pay at rates paid an apprentice. When it was seen that there would be a delay before trial of this case, the defendant agreed to employ the plaintiff as a 'laborer' pending the trial, without prejudice to his right. To this he

turned a deaf ear. Delaney's arbitrary stand, we think, relieved the company of any further obligation to reinstate him."

It is perfectly clear under the evidence, that plaintiff never sought to be returned to the position he had when he was inducted into the military service; he returned under a separate and distinct contract of employment to perform work of a distinctly different nature at a very substantial increase in pay.

The defendant raises the issue that the circumstances had so changed, that regardless of plaintiff's position, J. Gordon Turnbull, Inc., was entitled to dispense with the services of plaintiff following the death of J. Gordon Turnbull. In view of the court's finding upon the other issues, I see no reason to pass upon this one.

Therefore, in view of the aforesaid, it is my conclusion that the plaintiff is not entitled to recover.

Form of judgment entry, in accordance herewith, may be submitted within ten days.

